

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re JUDITH LYNN GIBBS, | Case No. 11-03070 |
| | Chapter 7 |
| Debtor. | |
| DANE S. FIELD, | Adv. Pro. No. 14-90035 |
| Plaintiff, | |
| vs. | |
| BANK OF AMERICA, N.A., | |
| Defendant. | |

## MEMORANDUM OF DECISION ON
## MOTION TO DISMISS

The plaintiff in this adversary proceeding, Dane Field, is Judith Lynn Gibbs'

bankruptcy trustee. The trustee claims that defendant Bank of America, N.A.

(BANA), improperly foreclosed a mortgage made by Ms. Gibbs. The trustee's

complaint asserts violations of the power of sale in the mortgage, Hawaii's

nonjudicial foreclosure law, and Hawaii's unfair and deceptive trade practices law. Because I find that the trustee's allegations plausibly state claims for relief, I will deny BANA's motion to dismiss for failure to state a claim upon which relief may be granted.

## I.     BACKGROUND

### A.     The Nonjudicial Foreclosure

Briefly summarized, the trustee's complaint alleges the following historical facts. I accept these allegations as true for purposes of this motion.

In 2008, Ms. Gibbs entered into a revolving line of credit, secured by a second priority mortgage on her property. She eventually defaulted. So the mortgagee, BANA, exercised its right under the mortgage and Hawaii law to sell the house in a nonjudicial foreclosure sale.

In 2010, BANA's attorney executed a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale," recorded it in the Bureau of Conveyances, and published it in a newspaper of general circulation. The notice said that the sale would be held on June 16, 2010, at "the Courtyard of Hoapili Hale, Second Circuit Court Building, 2145 Main Street, Wailuku." The notice further said that "this sale may be postponed by Mortgagee or its agent by public announcement." The notice (and a website purportedly incorporated in the notice) also listed the terms of sale, including the following:

U.S. Bankruptcy Court - Hawaii   #14-90035   Dkt # 27   Filed 12/05/14   Page 2 of 21

     (1)      BANA would only give buyers a quitclaim deed;

     (2)      The buyer had to pay at least ten percent of winning bid at the close of the auction;

     (3)      The buyer had to send BANA's attorney a cashier's check for the balance of the winning bid within twenty-one days after the auction; and

     (4)      The buyer had to close within thirty days or forfeit the ten percent down payment.

Shortly before the scheduled auction date, the state court stopped allowing nonjudicial foreclosure sales on its premises. So on June 16, 2010, BANA made an oral announcement postponing the sale to August 24, 2010. BANA made this announcement, not in the courtyard, but rather on a public sidewalk at the bottom of the steps of the entrance to the courthouse. A person standing in the courtyard, at the originally noticed place of the auction, could not see or hear an announcement given on the sidewalk at the bottom of the steps. BANA never published notice of the new date and location of the auction. BANA did this in order to economize on time and money, to reduce the competition against its potential credit bid, or to ensure that its preferred bidder won.

BANA conducted the auction on the sidewalk on August 24, 2010. Nancy Moore's bid of $111,875.25 (subject to the first mortgage on the property) was the winning bid. Ms. Moore made the bid on behalf of Wahikuli PS, LLC, the members of which were experienced buyers of foreclosed properties who had purchased other properties in foreclosures conducted by BANA's attorney.

Wahikuli's bid was substantially less than the market value of the property.

3

Wahikuli later resold the house for $535,000 in 2012.

The sale closed nine months after the auction, not thirty days as specified in the notice, and BANA gave the buyer a limited warranty deed, not a quitclaim deed. BANA knew that the winning bidders would get limited warranty deeds and they would get more than thirty days to close without losing their ten percent down payment.

### B. The Trustee's Adversary Proceeding

Ms. Gibbs filed for bankruptcy protection in November 2011. She received her discharge, and the case was closed. In 2014, the trustee reopened the case to initiate this adversary proceeding.

The trustee asserts three claims for relief. First, he claims that BANA violated Hawaii's Unfair and Deceptive Acts or Trade Practices (UDAP) law by engaging in a wide range of "unfair" and "deceptive" foreclosure practices. Second, he claims that BANA engaged in unfair methods of competition by deterring potential bidders, also in violation of the UDAP law. Third, he claims that BANA engaged in wrongful foreclosure by failing to comply with the nonjudicial foreclosure statute and the power of sale clause in the mortgage, and by failing to carry out its duties to act reasonably and in good faith to get the best possible price when it sold the house.

## II. STANDARD

The court may dismiss a complaint for "failure to state a claim upon which

4

relief can be granted."[1] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] A formulaic recitation of the elements of a cause of action does not suffice.[3] Only if a complaint states a plausible claim for relief will it survive a motion to dismiss.[4]

Therefore, on a motion to dismiss, there is a two-part analysis. I must first determine whether the plaintiff has stated a claim. Second, I must determine whether the claim is supported by sufficient factual allegations so that it is facially plausible.

## III.  DISCUSSION

### A.    Jurisdiction and Venue

The bankruptcy court has jurisdiction of the subject matter because this adversary proceeding arises in or is related to Ms. Gibbs' bankruptcy case.[5] Venue is proper in this district.

The bankruptcy court probably lacks the constitutional power to enter a final judgment on the trustee's claims against BANA which arise purely out of state law,

---

[1] Fed. R. Civ. P. 12(b)(6).

[2] *Compton v. Countrywide Financial Corp.*, 761 F.3d 1046, 1054 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[3] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[4] *Iqbal*, 556 U.S. at 678.

[5] 28 U.S.C. § 1344.

5

U.S. Bankruptcy Court - Hawaii  #14-90035  Dkt # 27  Filed 12/05/14  Page 5 of 21

unless BANA consents.[6] BANA has not yet been required to state its position on consent because it filed a motion to dismiss rather than an answer. If BANA does not consent, the bankruptcy court will not enter final judgment, but rather will make recommendations to the district court at the appropriate time.[7]

## B. The Trustee's UDAP Claim

### 1. *The Legal Standard for a UDAP Claim*

The trustee alleges that BANA violated the UDAP statute, section 480-2 of Hawaii's Revised Statutes. That section declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."[8] Section 480-2 is written broadly in order to provide plaintiffs with a flexible tool to prosecute their claims.[9]

A "'practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"[10]

---

[6] *Stern v Marshall*, 131 S.Ct. 2594, 2611 (2011); *Executive Benefits Insurance Agency v. Arkinson (In re Bellingham)*, 702 F.3d 553, 565 (9th Cir. 2012).

[7] *Executive Benefits Insurance Agency v. Arkinson*, 134 S.Ct. 2165, 2174 (2014)

[8] Haw. Rev. Stat. § 480-2.

[9] *Hawaii Federal Credit Union v. Keka*, 11 P.3d 1, 16 (Haw. 2000) (quoting *State ex rel. Bronster v. United States Steel Corp.*, 919 P.2d 294, 313 (1996).

[10] *Compton v. Countrywide Financial Corp.*, 761 F.3d 1046, 1052 (9th Cir. 2014) (quoting *Balthazar v. Verizon Haw., Inc.*, 123 P.3d 194 (2005)); *Keka*, 11 P.3d at 16 (quoting *United States Steel Corp.*, 919 P.2d at 313).

U.S. Bankruptcy Court - Hawaii   #14-90035   Dkt # 27   Filed 12/05/14   Page 6 of 21

An act is deceptive if it is "'(1) a representation, omission, or practice that (2) is likely to mislead consumers acting reasonably under the circumstances where (3) the representation, omission, or practice is material.'"[11] Failure to publicly announce the actual date of a foreclosure auction may be deceptive.[12]

Whether an act or practice is unfair is a question of fact.[13] "The application of an objective 'reasonable person standard . . . is ordinarily for the trier of fact, rendering summary judgment 'often inappropriate.'"[14]

For purposes of the UDAP statute, lending by a financial institution is the "conduct of any trade and commerce," and loan borrowers are "consumers."[15]

### 2. *The Trustee's Allegations*

The trustee alleges several factual bases for his claim that BANA acted unfairly or deceptively.[16] Among other things, the complaint alleges that BANA advertised that it would only provide the winning bidder with a quitclaim deed, that the winner would have to close within thirty days of the sale, that the winner had to provide full

---

[11] *Kekauoha-Alisa v. Ameriquest Mortgage Co. (In re Kekauoha-Alisa)*, 674 F.3d 1083, 1091 (9th Cir. 2012) (quoting *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1092 (9th Cir.2010) (quoting *Courbat v. Dahana Ranch, Inc.*, 141 P.3d 427, 435 (2006)).

[12] *Kekauoha-Alisa*, 673 F.3d at 1091.

[13] *Id.* (citing *Balthazar v. Verizon, Inc.*, 123 P.3d 194, 197 n. 4 (2005)).

[14] *Courbat v. Dahana Ranch, Inc.*, 111 Haw. 254, 263 (2006).

[15] *Keka*, 94 Hawaii at 227.

[16] Dkt. 1 at 22-24.

7

payment within twenty-one days, and that "time was of the essence." In fact, alleges the trustee, none of these conditions were true. Wahikuli had nine months to close and make the payment, but it did not lose its ten percent down payment, and Wahikuli got a limited warranty deed, not a quitclaim.

The complaint further alleges that these acts chilled bidding, damaging Ms. Gibbs by causing a lower price at auction. But for BANA's actions, the property would have sold for a higher price, and the debtor would have received the excess after BANA's lien was satisfied. Alternatively, the debtor could have earned rental proceeds if she had not lost her property due to BANA's unfair or deceptive acts in connection with the foreclosure.

### 3. *BANA's Arguments are Unavailing*

#### a. <u>Plaintiff Need Not Plead or Prove that BANA Owed an Independent Duty</u>

BANA argues that the trustee's UDAP claim fails because "he cannot base his UDAP claim on any alleged breach of duty."[17] The unstated premise of the argument is that there can be no UDAP violation unless the defendant owes a duty, independent of the UDAP statute, to the plaintiff. This premise is incorrect, and the Ninth Circuit has rejected it:

[B]orrowers are not obliged to show that the lender owed the borrower

---

[17] Dkt. 6-1 at 14.

8

a common law duty of care to state a claim under [the UDAP statutes]. . . . [S]ection 480-2 is better interpreted as imposing a *statutory* duty on lenders not to engage in 'unfair or deceptive acts or practices in the conduct of any trade or commerce.' . . .Thus a borrower need only allege that a lender has breached that statutory duty (in a way that caused private damages) in order to state a cause of action.[18]

The UDAP statute imposes an independent duty on all businesses to refrain from "unfair or deceptive acts or practices." The trustee need not establish that BANA owed and breached some other duty to Ms. Gibbs.

> **b.** **The Trustee Has Plausibly Alleged that BANA Owed and Breached a Duty to Maximize the Sale Price**

BANA argues that it owed Ms. Gibbs no duty to make any effort to maximize the price at the auction. I will not dismiss this adversary proceeding at this early juncture on that ground.

Taken to its logical extreme, BANA's argument against *any* duty leads to an absurd result. Suppose that a lender had a $500,000 mortgage in default and that the lender found someone who was willing to buy the property for $700,000. If BANA is right and the lender owes no duty regarding price to the borrower, the hypothetical lender could make a credit bid of $1.00 at the auction, make a profit of $699,000 (less expenses) on the resale, *and* recover a deficiency judgment of $499,000 (plus expenses) against the borrower. Hawaii law would not tolerate such an outcome.

---

[18] *Compton*, 761 F.3d at 1055-56.

9

U.S. Bankruptcy Court - Hawaii   #14-90035   Dkt # 27   Filed 12/05/14   Page 9 of 21

These are not the facts of this case, but the hypothetical shows that the lender must owe the borrower some duty regarding price.

Older Hawaii case law recognizes that a foreclosing mortgagee owes the mortgagor a duty to "[use] every effort to sell to the best advantage"[19] and to "use all fair and reasonable means in obtaining the best prices for the property on sale . . . ."[20]

BANA argues that I should follow the district court's decision in *Lima v. Deutsche Bank Nat. Trust Co.*[21] In that case, the court held that a foreclosing lender does not owe the mortgagee a duty to maximize price. I respectfully disagree with the district court's view.[22] *Lima* is inconsistent with *Ulrich*, in which the Hawaii Supreme Court held that "[t]he legal duties imposed on the mortgagee required it to use all fair

---

[19] *Silva v. Lopez*, 5 Haw. 262, 267 (1884).

[20] *Ulrich v. Security Inv. Co.*, 35 Haw. 158, 168 (1939).

[21] 943 F.Supp.2d 1093, 1099-1100 (D. Haw. 2013).

[22] There is a split of authority concerning whether bankruptcy judges are bound to follow the decisions of district judges in the same district. The majority view appears to be that *stare decisis* does not apply to such decisions, especially if there is more than one district judge in the district. *First of America Bank v. Gaylor (In re Gaylor)*, 123 B.R. 236 (Bankr. E.D. Mich. 1991); *In re Shattuc Cable Corp.*; 138 B.R. 557 (Bankr. N.D. Ill. 1992); Paul Steven Singerman, *Of Precedents and Bankruptcy Court Independence*, 22 Am. Bankr. Inst. J. 1 (2003). The minority view is to the contrary. *IRR Supply Centers, Inc. v. Phipps (In re Phipps)*, 217 B.R. 427 (Bankr. W.D. N.Y. 1998). Even if the minority rule is correct, *stare decisis* is a "principle of policy" and "not an inexorable command." *Payne v. Tennessee*, 501 U.S. 808, 828 (1991) (quoting *Helvering v. Hallock*, 309 U.S. 106, 119 (1940)). Even if I am not bound, I am still reluctant to disagree with my colleagues on the district court bench because they are very good judges who are usually right. In any event, it may not matter much in this case. If BANA does not consent to the entry of final judgment by the bankruptcy court, I will only provide recommendations to the district court which that court will review de novo and will be free to accept or reject.

10

and reasonable means in obtaining the best prices for the property on sale,"[23] and with *Silva*. The district court did not discuss *Silva* (apparently because the *Lima* plaintiffs did not cite it) and found *Ulrich* inapplicable for two reasons, neither of which I find persuasive.

First, the court noted that *Ulrich* involved a chattel mortgage (a security interest in personal property, in modern parlance) and not a mortgage on real property. But the nonjudicial foreclosure statute at that time did not differentiate between real and personal property.[24] I do not think that the Hawaii state courts would limit the duty to exercise "discretion in an intelligent and reasonable manner [and] not to oppress the debtor or to sacrifice his estate"[25] only to personal property, where the same statute covered both real and personal property.

Second, the district court in *Lima* noted that *Ulrich* was decided in 1939, and the nonjudicial foreclosure statute was later significantly revised. The court held that it should not read a duty into the statute that the legislature did not explicitly include.[26] I respectfully disagree. When the Hawaii Supreme Court decided *Ulrich* and *Silva*, the foreclosure statute said nothing about any duty to maximize the foreclosure

---

[23] *Ulrich*, 35 Haw. at 168.

[24] Chapter XXXIII of the Acts of 1874.

[25] *Silva*, 5 Haw. at 265.

[26] *Lima*, 943 F.Supp.2d at 1099-100.

U.S. Bankruptcy Court - Hawaii   #14-90035   Dkt # 27   Filed 12/05/14   Page 11 of 21

sale price. The Supreme Court held that there was such a duty despite the statutory silence. When the legislature amended the foreclosure statute in 2008, it continued the statute's silence about the duty to maximize price.[27] The district court interpreted this as expressing the legislature's intent to overrule *Ulrich*. I think this inference is incorrect. When interpreting statutes, a court must assume that the legislature knows the law and is aware of judicial interpretations of statutory language.[28] This means, among other things, that if the legislature enacts a statute with language like an earlier statute, judicial interpretation of the earlier statute also applies to the later statute.[29] By the same logic, when the legislature amends portions of a statute but leaves other parts unchanged, the appropriate inference is that the legislature knew about judicial interpretations of the unchanged portions of the statute and approved of them. The legislature's decision not to expressly overrule *Ulrich* should be interpreted as the legislature's *approval* of that decision. This is particularly appropriate since the amendments to the foreclosure statute increased the borrowers' rights in nonjudicial

---

[27] 2008 Haw. Sess. Laws, Act 138, § 667-5 at 370-71.

[28] *State v. Reis*, 165 P.3d 980, 998 (Haw. 2007) ("[W]e must presume that the legislature knows the law when enacting statutes."); *Agustin v. Dan Ostrow Const. Co., Inc.*, 636 P.2d 1348 (Haw. 1981) (holding that courts presume that the legislature knows courts' interpretation of statutes); *Cannon v. University of Chicago*, 441 U.S. 677, 696-97 (1979) ("It is always appropriate to assume that our elected representatives, like other citizens, know the law . . . . In sum, it is not only appropriate but also realistic to presume that Congress was thoroughly familiar with these unusually important precedents from this and other federal courts and that it expected its enactment to be interpreted in conformity with them.").

[29] *Reis*, 165 P.3d at 998; *Cannon*, 441 U.S. at 696-98.

U.S. Bankruptcy Court - Hawaii  #14-90035  Dkt # 27  Filed 12/05/14  Page 12 of 21

foreclosures. It is unlikely that the legislature intended to take away (without expressly saying so) an important right of borrowers when it enacted additional protections for borrowers.

I therefore reject BANA's argument that it owed no duty whatsoever to Ms. Gibbs to generate a reasonable price at the foreclosure sale. This leaves open the questions of exactly what duties are owed and exactly what BANA was required to do. These questions are difficult[30] and the motion to dismiss does not require me to answer them.

### c.  Conduct Not Barred by the Foreclosure Statute May Amount to a UDAP Violation

BANA relies on district court decisions holding that the UDAP statute does not impose duties on foreclosing mortgagees in addition to the duties imposed by the foreclosure statute. I decline BANA's request to dismiss this adversary proceeding on that basis.

I respectfully disagree with the district court's reasoning. In the district court's view, a court should not interpret the UDAP statute in a way that imposes obligations on foreclosing lenders that are not stated in the foreclosure statute. The logical consequence of this reasoning, however, is that foreclosing lenders are at least partly

---

[30] They can be solved, however; the Uniform Commercial Code has long required secured parties to dispose of personal property collateral in a "commercially reasonable" manner. Haw. Rev. Stat. § 490:9-610(b).

U.S. Bankruptcy Court - Hawaii   #14-90035   Dkt # 27   Filed 12/05/14   Page 13 of 21

exempt from the UDAP statute. But neither the language nor the state court decisions applying the UDAP statute provide for such an exemption.

In my view, the UDAP statute applies to foreclosing lenders and the foreclosure statute does not trump it. This means that foreclosing lenders must comply with at least two statutes, but businesses frequently must obey multiple statutes.[31] Compliance with the UDAP statute undoubtedly makes life more difficult for foreclosing lenders, but virtually all businesses face the same burden, which is a consequence of the Hawaii legislature's valid choice to adopt a sweeping consumer protection statute.

Contrary to the district court, I do not think that a court oversteps its role by applying both the UDAP statute and the foreclosure statute to foreclosing lenders. Rather, I think that it would overstep a court's role to create an exemption to the UDAP statute for foreclosing lenders which the statutory text does not support.

### d. The Trustee Has Plausibly Alleged UDAP Violations

BANA argues that the trustee has not alleged a violation of the foreclosure statute that might amount to a UDAP violation. These arguments rest on an unduly narrow reading of the complaint.

First, citing *Lima*, BANA argues that there is no requirement for a lender to

---

[31] The outcome might be different if the UDAP statute forbade conduct that the foreclosure statute required, or vice versa, but that is not the case here.

U.S. Bankruptcy Court - Hawaii  #14-90035  Dkt # 27  Filed 12/05/14  Page 14 of 21

provide buyers with anything more than a quitclaim deed.[32] I agree that neither the foreclosure statute nor the UDAP statute requires the lender to provide any warranties. But the argument in this case is different. The trustee alleges that BANA advertised that it would provide only a quitclaim deed, but actually issued a limited warranty deed, at least to a buyer with which BANA or its counsel had done business. Advertising to the public that only an undesirable kind of deed will be available, but then giving a better deed to a particular bidder, is a plausible allegation of an unfair or deceptive acts or practice.

Second, BANA argues that there was no requirement to publish a new notice of the postponed auction. Again, I agree that the foreclosure statute does not require the foreclosing mortgagee to publish a notice of postponement. But the statute and the mortgage require, at a minimum, that the mortgagee make a public announcement at the original time and location of the sale as set forth in the published notice. The trustee plausibly alleges that BANA did not make any announcement of postponement that could be heard or seen at the originally noticed auction site. Under *Kekauoha-Alisa*, failure to give proper notice of postponement creates a viable UDAP claim.[33]

Third, BANA argues that under the nonjudicial foreclosure statute, the thirty

---

[32] *See Lima v. Deutsche Bank Nat. Trust Co.*, 943 F.Supp.2d 1093, 1099 (2013).

[33] *Id.* at 1092.

U.S. Bankruptcy Court - Hawaii   #14-90035   Dkt # 27   Filed 12/05/14   Page 15 of 21

day deadline to close was permissible. I also agree with this. The complaint alleges, however, that BANA advertised an absolute thirty day deadline but actually gave the successful bidder, with whom BANA and its counsel had done business, much more time. This is a plausible allegation of a potentially unfair or deceptive practice. The trier of fact could find that saying one thing, but doing another, is "likely to mislead consumers acting reasonably under the circumstances."[34]

Fourth, BANA argues that the foreclosure statute does not forbid foreclosing lenders from imposing terms of sale or incorporating in their published notices terms of sale on a website. As explained above, a practice could be unfair or deceptive even if the foreclosure statute does not prohibit it. It will be up to the finder of fact to determine whether these terms, individually or collectively, are unfair or deceptive.

## C.     The Unfair Competition Claim

The trustee's second claim, like the UDAP claim, relies on section 480-2(a).[35] The trustee alleges that BANA engaged in unfair competition when it committed the unfair practices described above. The competition at issue was between BANA and other prospective purchasers. Since BANA had the right to credit bid up to the amount the debtor owed it, it was potentially in competition with other bidders.[36] If

---

[34] *Kekauoha-Alisa*, 674 F.3d at 1091.

[35] "Unfair methods of competition . . . are unlawful."

[36] Haw. Rev. Stat. § 667-29 (2010) ("If the successful bidder is the foreclosing mortgagee or any other mortgagee having a recorded lien on the mortgaged property before the recordation of the

U.S. Bankruptcy Court - Hawaii  #14-90035  Dkt # 27  Filed 12/05/14  Page 16 of 21

BANA's unfair acts chilled bidding, BANA could have purchased and resold the property for a large profit. Alternatively, it could have sold the property to Wahikuli, the buyer to which that it had previously sold foreclosed properties, at a price that boosted Wahikuli's profit.[37]

The unfair competition claim, too, should survive the motion to dismiss. It is a claim upon which relief can be granted and it is plausible. It is not implausible that BANA would seek to make a profit through the non-judicial foreclosure process or to sell at a favorable price to a party it already knew. According to the factual allegations in the complaint, BANA or Wahikuli stood to profit by more than $300,000 if the bidding had been sufficiently chilled. Accepting those allegations as true, it is also not implausible that this injured Ms. Gibbs and was against public policy. Therefore, the competition could be "unfair." Additionally, BANA's acts could have substantially injured consumers who were in the market for a home and who would have bid on the property if they knew the real terms of sale.

D.     **The Wrongful Foreclosure Claim**

The trustee's third claim for wrongful foreclosure should also survive the motion to dismiss. The trustee alleges that BANA's foreclosure was wrongful because BANA (1) violated the power-of-sale clause in the mortgage; (2) did not comply with

_____

notice of default under section 667-23, the downpayment requirement may be satisfied by offset and a credit bid up to the amount of the mortgage debt.").

[37] Dkt. 1 at 25.

U.S. Bankruptcy Court - Hawaii   #14-90035   Dkt # 27   Filed 12/05/14   Page 17 of 21

all the requirements in the nonjudicial foreclosure statute; and (3) breached its duties to act in good faith and to use "reasonable efforts to obtain the best possible price" for the debtor's property.[38] All three bases are plausible.

According to the complaint, the lender did not sell the property on the terms or at the time and place listed in the published notice of sale, failed properly to postpone the auction, failed to require an upset price at the auction, failed to have a licensed Hawaii attorney conduct the auction, and recorded a materially false affidavit of foreclosure.

These allegations plausibly state violations of the power of sale, the foreclosure statute, or the lender's duties as stated in the case law. The alleged defects in the notice of the postponement are particularly compelling. Some or all of them might not survive summary judgment after further briefing and factual development, but they are sufficiently alleged.

BANA argued in its reply memorandum that I should follow the holding in *Kama* and find that BANA's foreclosure affidavit is conclusive proof that the sale complied with the statute.[39] I will not accept that argument for two reasons. First, BANA only raised it in its reply memorandum. This is understandable since the *Kama* decision was rendered after BANA filed its motion, but nevertheless the trustee did

---

[38] Dkt. 1 at 26.

[39] *Federal Home Loan Mortg. Corp. v. Kama*, 2014 WL 4980967, *8 (D. Haw. 2014).

U.S. Bankruptcy Court - Hawaii   #14-90035   Dkt # 27   Filed  12/05/14   Page 18 of 21

not have an adequate opportunity to respond. Second, I respectfully disagree with the district court's conclusion. The statute states that the affidavit "shall be admitted as evidence that the power of sale was duly executed."[40] According to the plain meaning of the statute, the affidavit is one piece of relevant evidence but does not create an irrebuttable presumption that the lender strictly complied with the statute. (Were that the case, lenders could flout the Hawaii Supreme Court's strict compliance requirement[41] with abandon simply by filing an affidavit.)

## E.     The Damages Allegations are Sufficient

BANA argues that the trustee has not sufficiently pled his damages. This argument fails. The complaint's allegation of damages is at least as detailed as the allegations that the Ninth Circuit found adequate in *Compton*,[42] which was a UDAP case arising out of a mortgage foreclosure. In that case, the Ninth Circuit held that "merely stat[ing]" that the plaintiff "suffered 'considerable hardship' due to spending 'almost two years'" attempting to modify her mortgage and ending in foreclosure was

---

[40] Haw. Rev. Stat. 667-64 (2014).

[41] *See Lee v. HSBC Bank, USA*, 218 P.3d 775, 780 (Haw. 2009) (" A mortgagee, or an entity acting on its behalf, cannot, however, proceed with a nonjudicial foreclosure under a power of sale clause in the mortgage unless it complies with either HRS section 667–5, or its alternative HRS sections 667–21, et seq.5 Without such compliance, the mortgagee has no legal authority to exercise its power of sale in a nonjudicial foreclosure sale.").

[42] *Compton*, 761 F.3d at 1053-54, 1057. I do not fault BANA's counsel for failing to cite *Compton* because that decision came down on the very same day that BANA filed its motion to dismiss. Nevertheless, the damages discussion in the district court decision on which BANA relies, *Sigwart v. U.S. Bank, N.A.*, Civil No. 13-00529 LEK-RLP, 2014 WL 1322813 (D. Haw. March 31, 2014), cannot survive *Compton*.

U.S. Bankruptcy Court - Hawaii   #14-90035   Dkt # 27   Filed  12/05/14   Page 19 of 21

sufficient to survive a motion to dismiss.[43] By comparison, the trustee has pleaded

Ms. Gibbs' damages in more detail. The trustee alleges that BANA's actions

> "chilled" bidding on the Gibbs Property and caused the Property to sell for a price significantly below both market value and the price it would have sold for had the BANK not breached its duties and obligations as an agent and quasi-fiduciary of Gibbs. Moreover, by employing the above-described foreclosure practices, BANK OF AMERICA deprived Gibbs of the use and enjoyment of her Property before the BANK was lawfully entitled to do so. Accordingly, as a direct and proximate result of BANK OF AMERICA's wrongful foreclosure, Gibbs lost substantial equity in her Property, lost the use and/or rental value of the Property, and incurred expenses, including, but not limited to, legal fees and costs, all in amounts to be proved at trial.[44]

If alleging that the plaintiff suffered "considerable hardship" without providing any

detail is sufficient to survive a motion to dismiss, then the trustee has carried his

burden.

BANA argues that, even if the trustee is right about the alleged defects in the

foreclosure sale, the trustee's only remedy would be to invalidate the foreclosure sale.

I disagree. The cases BANA cites hold that a defective foreclosure sale can be set

aside, but they do not prohibit a damages remedy. The trustee's claims are partly

based on breach of contract, and the victim of a contractual breach often can elect

either to rescind the contract or recover damages. Also, Hawaii courts will not grant

---

[43] *Compton*, 761 F.3d at 1057.

[44] Dkt. 1 at 27.

U.S. Bankruptcy Court - Hawaii  #14-90035  Dkt # 27  Filed 12/05/14  Page 20 of 21

equitable relief when an adequate legal remedy (i.e. monetary damages) is available.[45]

Finally, denying a damages remedy might leave a victimized borrower with no

meaningful relief; for example, it is not clear that the sale could be set aside if

Wahikuli sold the mortgaged property to a subsequent good faith purchaser for value.

## IV.  CONCLUSION

THEREFORE, the motion is DENIED.

### END OF MEMORANDUM

---

[45] *Beneficial Hawaii, Inc. v. Kida*, 30 P.3d 895, 918 (Haw. 2001) (quoting *Henry Waterhouse Trust Co. v. King*, 33 Haw. 1, 9 (1934)).

U.S. Bankruptcy Court - Hawaii   #14-90035   Dkt # 27   Filed 12/05/14   Page 21 of 21